# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINO N. THEODORE, ) | |
| and ACCESS WITH SUCCESS, INC., ) | |
| **Plaintiffs** ) | **CIVIL ACTION NO.: 1:14-cv-12362** |
| ) | |
| **v.** ) | |
| ) | |
| LAZ PARKING LIMITED, L.L.C., ) | |
| SMG FOOD AND BEVERAGE, L.L.C., ) | |
| and THE CITY OF WORCESTER, ) | |
| MASSACHUSETTS , and ) | |
| TICKETMASTER, L.L.C ) | |
| **Defendants** ) | |

## COMPLAINT

The plaintiffs bring this action to enforce Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(b)(2), as against Laz Parking Limited, L.L.C. ("Laz Parking") and as against SMG Food and Beverage, L.L.C. ("SMG") and as against Ticketmaster, L.L.C. ("Ticketmaster") and to enforce Title II of the ADA, 42 U.S.C. §12132, et seq., as to the City of Worcester, Massachusetts ("Worcester"). The plaintiffs, Dino N. Theodore and Access with Success, Inc. ("AWS") allege that defendants have violated Title II and Title III of the ADA.  The plaintiffs seek injunctive relief (1) to compel the defendant, SMG, as operator of the DCU Center, to remove architectural barriers to wheelchair access at the DCU Center; (2) to compel Worcester, as owner of the DCU Center, to provide equal access to qualified individuals with disabilities to all programs, activities, and services offered at the DCU Center; (3) to compel LAZ Parking to remove architectural barriers to wheelchair access at the Major Taylor Municipal Garage (which serves as an adjacent parking facility that offers discounted parking for public events held at the DCU Center); (4) to compel Worcester, as owner of the Major Taylor Municipal Garage, to provide equal access to qualified individuals with disabilities to all

programs, activities, and services offered at the Major Taylor Municipal Garage; and (3) to compel SMG and Ticketmaster to modify online ticketing policies for public events held at the DCU Center to make the DCU Center accessible to disabled persons on an equal basis with non-disabled persons.

## PARTIES

1.      The plaintiff, Dino N. Theodore, age 54, is paralyzed from the chest down and uses a wheelchair for ambulation.  He drives a car equipped with hand controls.

2.      Mr. Theodore resides in Dracut, Massachusetts.  He is a practicing attorney employed by the Department of Industrial Accidents in Massachusetts.  He has been admitted to practice law in Massachusetts since 1993.  He is married and has two children.

3.      Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes, including the ADA, and is disabled within the meaning of the ADA in that he is substantially limited in performing one or more major life activities, including but not limited to walking and standing.

4.      The plaintiff, AWS, is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts.  Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA.  Scott M. Frotton is a founding member of AWS.  Mr. Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998.  He always uses a wheelchair for ambulation.  He drives a vehicle equipped with hand controls.  Scott Frotton's wife, Tammy Frotton, is also a founding member of AWS.  She is not disabled.  Mr. Frank Salafia is a member of AWS.  He is hearing impaired and has a total loss of vision in one eye.  G. David Iverson is a member of AWS.  He is paraplegic due to an injury he sustained in 1987.  He always uses a wheelchair for ambulation.

He drives a vehicle equipped with hand controls.  Michelle A. Paletta is a member of AWS.  She

sustained ruptured lumbar discs in a car accident many years ago and the condition has

degenerated such that she can stand for brief periods of time, but is not able to walk without

assistive devices.  She almost always uses a wheelchair for ambulation.  Raymond J. Aziz is a

member of AWS.  Mr. Aziz wears braces on both ankles and frequently walks with a cane.  His

condition is secondary to adult onset of diabetes.  Robert Brearley is a member of AWS.  He is

paraplegic due to a fall from a height in 1980.  He cannot walk and always uses a wheelchair for

ambulation.  Daniel J. Murphy, Jr. is a member of AWS.  Mr. Murphy sustained a C-6 spinal

cord injury in a water diving accident in 1974.  He is quadriplegic.  He always uses a wheelchair

for ambulation.  Alex Malvers has cerebral palsy.  He always uses a wheelchair for ambulation.

5.      The individually named plaintiff, Dino N. Theodore, is a member and a director of AWS.

All of the above-named members of AWS, except for Tammy Frotton, are qualified individuals

with disabilities within the meaning of the ADA and all other applicable federal and state

statutes.

6.      AWS is a civil rights group organized for charitable and educational purposes by

individuals with disabilities to advocate for the integration into society of disabled persons and

equal access to all services, activities, programs, resources and facilities available to non-

disabled persons. Its members are predominantly, but not exclusively, individuals with various

physical disabilities impairing mobility, speech, vision and hearing. One of the primary purposes

of AWS is to assure that private places of public accommodation are accessible to, and usable by

persons with disabilities. AWS seeks to send a clear message that segregated services and

inaccessible public accommodations are against the law and should not be tolerated.

7.      Title II and Title III of the ADA permit private individuals to bring lawsuits in which

they can obtain court orders to stop discrimination on the basis of disability.

8.      AWS and its members have suffered direct and indirect injury as a result of the defendants' actions or inactions as described herein. AWS also has been discriminated against because of its association with Dino Theodore and his claims. The defendants' failure to comply with the ADA adversely affects the organizational purpose of AWS.

9.      The defendant, Laz Parking, is a Massachusetts limited liability company with a principal place of business at 4 Copley Place, Suite 4400A, Boston, Massachusetts 021l6.  The general character of its business is parking management services.   At issue in this case is Laz Parking's operation and management of the Major Taylor Municipal Garage at 30 Major Taylor Boulevard in Worcester.

10.      The defendant, SMG, is a Delaware limited liability company with a principal place of business at 300 Conshohocken State Road, Suite 450, West Conshohocken, PA 19428.  The general character of its business is management of public assembly facilities.   At issue in this case is SMG's operation and management of the DCU Center at 50 Foster Street in Worcester under contract with Worcester.

11.      The defendant, Worcester, is a municipal corporation duly created and existing in the Commonwealth of Massachusetts with a usual place of business at City Hall, 455 Main Street, Worcester, MA 01608.  At issue in this case is Worcester's ownership of the Major Taylor Municipal Garage, 30 Major Taylor Boulevard, Worcester, and the DCU Center.

12.      The defendant, Ticketmaster, is a limited liability company organized under the laws of Virginia with a principal place of business at 9348 Civic Center Drive, Beverly Hills, CA 90201. The general character of Ticketmaster's business is event ticketing.  At issue in this case is Ticketmaster's operation of online ticketing services for events at the DCU Center.

13.     By January 26, 1992, public accommodations, such as the Major Taylor Municipal Garage and the DCU Center, were required to conform to 28 C.F.R. Part 36, "Americans with Disabilities Act Accessibility Guidelines."

14.     As of March 14, 2012, public accommodations and commercial facilities, such as the Major Taylor Municipal Garage and the DCU Center, were required to follow the requirements of the 2010 Standards for Public Accommodations and Commercial Facilities: Title III, including both the Title III regulations at 28 CFR part 36, subpart D; and the 2004 ADAAG at 36 CFR part 1191, appendices B and D.

15.     The Major Taylor Municipal Garage and the DCU Center are places of public accommodation subject to the requirements of the Title III of the ADA and the 2010 Standards.

16.     Title II of the ADA prohibits discrimination against qualified individuals with disabilities in all programs, activities, and services of a public entity such as Worcester.

17.     Worcester, as a public entity, is subject to Title II in its capacity as landlord of the DCU Center.  Likewise, Worcester is subject to Title II in its capacity as landlord of the Major Taylor Municipal Garage.

18.     Under Title II of the ADA, Worcester is obligated to ensure by contract with Laz Parking that the Major Taylor Municipal Garage will be operated in a manner that enables Worcester to meet its Title II obligations.

19.     Under Title II of the ADA, Worcester is obligated to ensure by contract with SMG that the DCU Center will be operated in a manner that enables Worcester to meet its Title II obligations.

20.     Under Title II of the ADA, Worcester cannot refuse to allow an individual to park a vehicle in its Major Taylor Municipal Garage merely because the individual is a qualified person

with a disability.

21.     Under Title II of the ADA, Worcester cannot refuse to admit an individual to an event at

its DCU Center or deny an individual an equal opportunity to attend as a paying spectator

because the individual is a qualified person with a disability.

22.     The defendant, Laz Parking, operates the Major Taylor Municipal Garage, which is a

public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181(7) (E), and its

implementing regulation at 28 C.F.R. § 36.104.

23.     The defendant, SMG, operates a "stadium, or other place of exhibition or entertainment,"

which is a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181(7) (C),

and its implementing regulation at 28 C.F.R. § 36.104.

24.     The defendant, Ticketmaster, is a place of public accommodation pursuant to 42 U.S.C. §

12181(7)(E) and (F).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

25.     Congress enacted the ADA **in** 1990 to remedy widespread discrimination against disabled

individuals. In studying the need for such legislation, Congress found that "historically, society

has tended to isolate and segregate individuals with disabilities, and, despite some

improvements, such forms of discrimination against individuals with disabilities continue to be a

serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

26.     Congress found that the many forms such discrimination takes include "outright

intentional exclusion" as well as the "failure to make modifications to existing facilities and

practices." 42 U.S.C. § 12101(a)(5).

27.     After thoroughly investigating the problem, Congress concluded that there was a

"compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination

against disabled individuals and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

28.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

29.     In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

30.     In order to make a prima facie case under Title II of the ADA, a plaintiff must prove that (1) he has a disability (2) but is otherwise qualified to participate in or receive a public benefit, services, program, or activity; (3) and that he was either excluded from participation in or denied the public benefit, services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that this exclusion, denial of benefits, or discrimination was by reason of his disability.

31.     The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

32.     A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

33.     The Major Taylor Municipal Garage and the DCU Center must be, but are not, in compliance with the ADA and the 2010 Standards.

34.     Ticketmaster and SMG must modify online and internet ticketing policies and procedures because under the ADA, it is "discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

## JURISDICTION AND VENUE

35.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendants are subject to personal jurisdiction.

36.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### A.     TICKETING

37.     Venues, such as the DCU Center, are required to sell tickets for wheelchair accessible seats in the same manner and under the same conditions as all other ticket sales.

38.     Under the ADA, tickets for accessible seats must be sold: during the same hours; through the same methods of purchase (by telephone, on site, through a website, or through third-party vendors); and during the same stages of sales (pre- sales, promotions, general sales, wait lists, or lotteries) as non-accessible seats.

39.     On or about January 4, 2013, Mr. Theodore planned to purchase tickets online for himself, his daughter, and her friend to attend an Amsoil Arenacross event at the DCU Center to be held on that date.

40.     In searching for tickets, including a ticket for a wheelchair accessible seat, Mr. Theodore

found that the DCU Center website stated:

> "The comfort of our patrons is essential; therefore the DCU Center recognizes the special needs of the physically challenged. Every effort has been made to comply with these needs, as defined by the Americans with Disabilities Act (ADA).
>
> Generally, depending on the size of the party, price and availability of seating, we try to keep everyone in the group in same area. Door 13 of the arena and Doors 1 & 2 of the convention center are handicapped accessible entrances. There are also designated elevators within the convention center for greater convenience. If you have any unique special needs, please contact the DCU Center Box Office and we will try to accommodate your request based on availability of seating. Listening devices are provided to our hearing impaired patrons who request them.
>
> If you need a sign language interpreter, please contact us at 508-755-6800 ext. 2164 or info@dcucenter.com. We do ask that all requests for listening devices or sign language interpreters be made one week prior to the event.
>
> Physically challenged seating is available in various price levels and sections of the arena. **For more information or to purchase physically challenged seats over the phone, please contact the Box Office at 508-755-6800 ext. 2164. You may also purchase physically challenged seating through Ticketmaster."**

41.     Mr. Theodore checked the Ticketmaster website for DCU Center event tickets.  He found

that the Ticketmaster site stated:

> "Accessible seating is reserved for the exclusive use of disabled patrons and their guests. The purchase or use of these seating locations by non-disabled individuals is strictly prohibited and may result in ejection and/or forfeiture of ticket price. If the disabled individual cannot attend an event for which he/she has purchased tickets, call the DCU Center Box Office prior to the event taking place for further instructions.  DCU Center tickets for patrons with accessible needs, subject to availability, may be purchased in the following ways:  1) Order online at Ticketmaster.com  2) Call the DCU Center Box Office (508) 929-0164  3) Call Ticketmaster at (800) 745-3000  4) Visit the DCU Center Arena Box Office – 50 Foster St., Worcester, MA 01608  5) Visit Ticketmaster Outlets. For additional information regarding accessing DCU Center or questions, please call the DCU Center Box Office at (508) 929-0164.  Assistive Listening Devices (ALD) are available upon request, subject to availability. To ensure availability, we do ask that all requests for listening devices be made at least one week prior to the event by calling the DCU Center Box Office or by sending an email to info@dcucenter.com."

42.     Mr. Theodore found that the statement on Ticketmaster.com that tickets for accessible

seating at the DCU Center may be ordered "online at Ticketmaster.com" to be false.  The statement on the DCU Center website that "You may also purchase physically challenged seating through Ticketmaster," is also false.  **When Mr. Theodore** clicked the icon for accessible DCU Center seating at Ticketmaster.com, he was referred back to the above-referenced paragraph with instructions to visit the DCU Center Box Office or contact it by telephone.

43.     On or about January 4, 2013, Mr. Theodore attempted to call the DCU Center telephone number for information and requests on accessible seating.   His first attempt yielded a busy signal as did his second and third. He waited some time and tried again, but on the fourth try there was no answer.  Frustrated, he ceased attempts to contact the box office and purchase tickets.

44.      The discriminatory ticketing policies and procedures persist as of the date of this Complaint.

**B.**     **PARKING AT MAJOR TAYLOR MUNICIPAL GARAGE**

45.     The Major Taylor Municipal Garage has six floors.   There is no parking available on the first floor.  The garage has a passenger elevator.  There are more than 100 spaces per each floor from the second floor up to the sixth floor.  On information and belief, the Major Taylor Municipal Garage has at least 1000 spaces in total.  There are four spaces designated as wheelchair accessible near the elevator doors on the second floor.  There are three spaces designated as wheelchair accessible near the elevator doors on the third floor.  There are four spaces designated as wheelchair accessible near the elevator doors on the fourth floor.  There is one space designated as wheelchair accessible near the elevator doors on the fifth floor.   There are four spaces designated as wheelchair accessible near the elevator doors on the sixth floor.

46.     All of the spaces that are marked or designated as wheelchair accessible do not meet the requirements of Standard 502.  There are no van accessible spaces, but one in every six accessible spaces should be a van accessible space.   The total number of spaces in the garage designated as accessible is below the minimum number permitted under ADA Standards.

47.     The existing spaces are poorly marked and are not readily identifiable as wheelchair accessible.  Paint on the floor surface of the accessible spaces is worn.  It is not high contrast paint.  The above ground signage does not meet the ADA Standards.

48.     Under the ADA Standards, each floor of the Major Taylor Municipal Garage should have at least seven accessible parking spaces, one of which must be van accessible.

**C.      SEATING**

49.     According to its website, the DCU Center is an arena with 14,800 seats and 58,960 square feet of contiguous exhibition space, two ballrooms, eleven meeting rooms, two lounges, two luxury boxes in the arena, and permanent and portable concession stands.

50.     The DCU Center lacks wheelchair accessible seating.

51.     The 2010 ADA Standards specify a ratio of wheelchair spaces to fixed seating in an assembly.  Table 221.2.1.1 states that where there are 5,001 seats and over there must be 36 wheelchair spaces, plus 1 per each 200 seats or a fraction thereof over 5,000.

52.     Accessible wheelchair seats are spaces specifically designed for wheelchairs and include features such as an accessible approach, location at grade, clear floor space, and larger dimensions.  The DCU Center lacks such seats.

53.     The DCU Center lacks a sufficient number of accessible seats as per the ADA Standards.

54.     At the DCU Center, wheelchair accessible seating is not offered in a variety of seating positions.  All wheelchair accessible seats are located at the same level.  There is no vertical distribution of accessible seating as required by the ADA.

55.     Standard 221.2.2 states, "Wheelchair spaces shall be an integral part of the seating plan."

56.     Advisory 221.2.2 states, "The requirement that wheelchair spaces be an 'integral part of the seating plan' means that wheelchair spaces must be placed within the footprint of the seating area.  Wheelchair spaces cannot be segregated from seating areas.  For example, it would be unacceptable to place only the wheelchair spaces, or only the wheelchair spaces and their associated companion seats, outside the seating areas defined by risers in an assembly area."

57.     Wheelchair spaces at the DCU Center are segregated from other seating areas.

58.     Standard 221.2.3 states, "Wheelchair spaces shall provide spectators with choices of seating locations and viewing angles that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to all other spectators."  Standard 221.2.3.2 requires vertical dispersion of accessible seating " so that the distance from the screen, stage, playing field, area of sports activity, or other focal point is varied among wheelchair spaces."

59.     The current segregation of wheelchair spaces at the DCU Center is prohibited by Standards 221.2.3 and 221.2.3.2.

60.     Some people with disabilities can use aisle seats with retractable or removable armrests, known as "designated aisle seats."  Standard 221.4 states, "At least 5 percent of the total number of aisle seats provided shall comply with 802.4 and shall be the aisle seats located closest to the accessible routes."  The DCU Center should be, but is not, in compliance with Standard 221.4.

61.     The luxury boxes should have, but do not have, accessible event-viewing spaces in the ratio specified in Table 221.2.1.1.   The luxury boxes also lack accessible seating for drinking and dining.  Wherever bar seating is offered, 5% of the bar seats must be accessible and the counter top at those spaces must be no more than 34" above the finish floor with forward approach compliant knee space.  Likewise, 5% of the dining tables must be accessible and must be dispersed throughout the interior space.

**D.     RESTROOMS**

62.     The water supply and drain pipes under the sinks of the men's restrooms at the DCU Center are not, but should be "insulated or otherwise configured to protect against contact" as per Standard 606.5.  Many of the restrooms lack wheelchair accessible stalls, urinals, and sinks.

63.     "The building has long been short on restroom facilities," said Sandy Dunn, general manager of the DCU Center. "Our fans have consistently said you have to do something to improve that."  *Worcester Telegram & Gazette,* 1/22/12.

**E.     CONCESSION STANDS**

64.     Some, but not all, concession stands at the DCU Center have lowered accessible counters and transaction areas.  Each and every concession stand must be wheelchair accessible.

**F.     GENERAL ALLEGATIONS**

65.     Mr. Theodore wishes to be able to attend events at the DCU Center in the future.  He reasonably expects that he will return to the DCU Center, but he continues to be denied meaningful and equal access to the facility due to discriminatory policies and architectural barriers to wheelchair access.

66.     The defendants have discriminated against the plaintiffs and continues to discriminate against them by denying them access to, and full and equal enjoyment of the goods, services,

facilities, privileges, advantages and/or accommodations of the DCU Center as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

67.     On information and belief, the DCU Center has undergone major renovations in the past two years.  The DCU Center has not made alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.  42 U.S.C. § 12183(a)(2).

68.     On information and belief, the DCU Center has undergone extensive renovations since it opened in 1997 such that including accessible features was mandatory, but the defendant, Worcester, did not include accessibility features in the renovations.

69.     Mr. Theodore has suffered an injury in fact as a result of the defendants' non-compliance with the ADA.  His expectation to purchase a ticket and return to the DCU Center creates a real and immediate threat of future harm.

70.     The defendants have failed to adopt an adequate nondiscrimination policy or have failed to update existing policies.

71.     The defendants, SMG and Worcester, have failed to train DCU Center staff adequately with regard to ADA requirements.

72.     The defendants have failed to modify their policies to accommodate disabled persons.

73.     The defendants have failed to take those steps that may be necessary to ensure that individuals with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

74.     The defendants have denied persons with disabilities, such as Mr. Theodore, an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are equal to that afforded to other patrons of Ticketmaster.com, the Major Taylor Municipal Garage, and the DCU Center.

75.     The defendants have failed to implement a plan for removing architectural barriers to wheelchair access.

76.     On information and belief, Mr. Theodore alleges that there are other ADA violations present within the DCU Center that will be more fully alleged upon discovery and further inspection.

77.     The actions and initiatives that the defendants have failed to undertake in order to make the DCU Center accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendants.

78.     The defendants' conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendants will continue to violate the ADA.  Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

79.     The injunctive relief requested below will redress Mr. Theodore's injury.

        WHEREFORE, The plaintiffs respectfully request that the Court will order the defendants to modify Ticketmaster.com, the Major Taylor Municipal Garage, and the DCU Center and to amend their policies to make such places of public accommodation and municipal programs and services readily accessible to and useable by individuals with disabilities on an equal basis with non-disabled persons to the extent required by the Americans with Disabilities

Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

Respectfully submitted,
The Plaintiffs, DINO THEODORE, et al.,

By their Attorneys,


/s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800
Dated: 6/3/2014          nguerrera@sgolawoffice.com